24-3316 Eastern Arkansas, Robert Ward v. City of Sherwood, Arkansas et al. All right, Mr. Timmons, you may proceed. Good morning, Your Honors, and may it please the Court. My name is Bryce Timmons, and I represent the appellant plaintiff in this third qualified immunity case this morning. The appeal, or rather the district court, must be reversed here because the district court resolved disputed facts, treated ambiguous video evidence as conclusive, and dismissed a malicious prosecution claim under a rationale that the Supreme Court has expressly rejected, which is that you cannot bundle all claims together and that they must be decided individually. Most fundamentally, however, the officer's own testimony in controlling Eighth Circuit law foreclosed any finding of probable cause or arguable probable cause. I'd first like to address the issue of the malicious prosecution claim for public intoxication because the district court there simply disposed of this issue in a couple of sentences saying it was moot because the other claims gave rise to the arrest. What's wrong with that reasoning? The Supreme Court foreclosed that line of reasoning in Civarini v. City of Napoleon, which requires that each malicious prosecution claim be analyzed, each charge be analyzed individually. Just by having other charges out there, it doesn't automatically immunize a malicious prosecution claim for the- What if there's no harm to the person from the additional charge? The Supreme Court relatively recently, in 2021, in the most unpronounceable case I can think of, I believe it's Obegezunum v. Przybyzewski, stands for the proposition that nominal damages alone are sufficient to support standing for a civil rights violation and that the claim can proceed. So even if all this was was a malicious prosecution that ultimately resulted in no long-term incarceration or anything of that sort, he would still have standing to proceed just for nominal damages for the civil rights violation. Now, we don't think that's what this appeal is about. This appeal is fundamentally about the fact that it's undisputed here that Officer Harris, in his own deposition, said that he arrested Mr. Ward because he used vulgarity. And I'll refrain from using that vulgarity in this court. But the vulgarity in question was a descriptive term applied to neighbors who were not present, who had on seven separate occasions made seven false noise complaints against the Wards. And for the seventh time, an officer from the Sherwood Police Department, in this case Officer Harris, appeared at the Wards' home. The Wards knew their rights because they were both law enforcement officers themselves and they stepped onto the curtilage of their property where they encountered Officer Harris. Officer Harris, in his own deposition, and this is quoted on page seven of our brief, there is a deposition testimony where he agrees that he only effectuated the arrest because Ward used the word, from mentioning in this court. The neighbors that were described. Isn't arguable probable cause an objective standard, not subjective? It is, Your Honor. I just think it's important. If it's objective, what about there's an Arkansas refusal to submit to arrest statute and there's also a disorderly conduct statute? So with the Arkansas refusal. Does a reasonable officer have arguable probable cause to take the same action based on those, at least those two statutes? So the resisting arrest standard that the appellee seeks to apply is a circular one that the Supreme Court, as I recall, has retracted previously, which is the idea that even if the initial arrest is totally improper, then later any resistance whatsoever can immunize previous false arrests. Now, even if that were the case, and we don't agree that it is, then the court can then discreetly time slice these events, and again, then you've got a false arrest right at the beginning for this disorderly conduct. And the disorderly conduct standard, the elements of disorderly conduct are simply not met here. Mr. Ward is not engaging in threatening behavior. To the extent that the district court found that, he based it entirely, entirely on subjective interpretations, and even throughout the order uses subjective terminology. The words tone, demeanor, in fact, right at the beginning, in the very first page of the district court's order, which sets the. . . That the arrest is based on probable cause, right? And it's an objective, reasonable standard of the mistaken belief, which is a weird thing, right? But when you look at it, you're sitting there and you're saying, you know, what the officer sees and does somehow has to go to reasonableness, right? And in this case, there's video, so you can see what's happened. And the question on this arguable probable cause piece is that I think that you look at the mere vulgarity that's unconstitutional, right? So you look at, well, we've got the disorderly conduct, and the arrest piece doesn't arise until he refuses to submit to the arrest. So the real first intervention where we look at this, you know, arguable probable cause, is that when you are moving back and forth from, you know, with his wife standing between the two, and he's making comments to Officer Harris repeatedly, calls him names, tells him to, you know, says he's a rookie, I'm not letting this rookie push me around, says you better get your supervisor here, and then he says something about, what's it, Section 3 or . . . Code 3, that's what it is, Code 3. Is that enough to say, well, that looks like disorderly conduct under the elements, right? And if not, why not? Well, those are ambiguous issues in the video, and they need to be resolved by a jury. A jury instruction might very well resolve the problem that the court just brought up. Qualified immunity issues are reserved at the earliest possible stage, but just in the last case I tried, that meant some facts had to be resolved by a jury, and the Supreme Court has raised that in recent qualified immunity decisions. I believe I'd . . . I think I just want to address quickly the idea that Thuri Aja versus City of Fort Smith really controls this case, and that is the central qualified immunity case on which we are relying. I believe it addresses most of your questions, Judge Erickson. Unless the panel has other questions for me, I'd like to reserve time for rebuttal. Well, you may do so. Thank you for your argument. Mr. Wren, we'll hear from you. May it please the Court, my name is Keith Wren. I'm here on behalf of Officer Matthew Harris. Respectfully, Thuri Aja does not control. Thuri Aja was the quintessential case of someone insulting a police officer and getting arrested for it. That was the case of the police officer that was pulled over on a traffic stop and a passerby came by and flipped him the bird, and then he left the traffic stop and arrested that individual for it. That's not at all the case that we have here. Yes, certainly Mr. Ward was insulting to the officers that were on the scene, but that did not cause his arrest. He used profanity. However, the profanity is not protected speech if it otherwise violates the law. Szaplinski versus, I believe it was New Hampshire, I want to say, long ago, said that words that are fighting words are not protected speech. And in this particular case, Mr. Ward's use of profanity crossed that line. As the district court noted. The case turns on whether there was, on the fighting words exception? This case does not turn on that at all. You led with that point. I thought maybe you thought it was. Well, I led with that point only because my opposing counsel finished saying that the Thuri Aja case hinged on that, and it clearly does not. I only point that out just to say that there's a long line of cases to the contrary. And the district court found that the profanity used in this case could certainly constitute fighting words. But even beyond that, this is a simple case. It does not turn on disputes of fact. There is video that is not ambiguous, that is clear. The sound is good. The video is good. And we can see the vast majority of what goes on. Specifically, we can certainly see what all goes on that leads up to the probable cause, or at the very least, the arguable probable cause for the plaintiff's arrest. In fact, the clarity of the video was admitted by the plaintiff to the district court in its arguments opposing summary judgment. And that's in the record at the appendix at page 324. The most obvious reason for the plaintiff's arrest was the disorderly conduct for the threatening nature of his words. And as the district court correctly pointed out, his opinion was not based simply on the quote, moment of the threat as has been argued in the plaintiff's amended supplemental brief. But in fact, the district court applied the totality of the circumstances test. He noted the plaintiff's activities of staring at the officer, pacing, the tone of his voice, the belittling comments, and finally, when the plaintiff said you should get your supervisor here, and the officer responded that he had already requested his supervisor to arrive, was the code 3 comment that the plaintiff, who is a police officer himself, told Officer Harris that he better get his supervisor to get your code 3. And so the plaintiff being, well at this point, a deputy sheriff and a former police officer, his wife being a police officer and addressing police officers, in that context, certainly they knew that that was a threat. Code 3, the plaintiff later in his deposition tried to play it down by saying, well, that could be just a call for emergency services for a car wreck or a medical emergency. But that's not the context of what was going on in this case. This was in the context of what was at the moment a verbal confrontation between the plaintiff and the officers in his backyard, or in his driveway, I believe it was correctly. It wasn't summoning someone because someone's having a heart attack or there's been a car wreck. So certainly in that context, those officers reasonably perceived it as a threat. The plaintiff's wife, who was also a police officer, by her reaction on the video, clearly perceived it as a threat. The plaintiff's supervisors at the sheriff's department, who ultimately fired him because of that comment, specifically stated that they perceived it as a threat. Clearly, that fits within the Arkansas statute for disorderly conduct, for engaging in fighting, threatening, or tumultuous behavior. What about this argument that was raised this morning that there should precede a malicious prosecution claim on the public intoxication charge, even if there was arguable probable cause on the disorderly conduct charge, because potentially the plaintiff could seek or receive nominal damages for malicious prosecution of public intoxication? I didn't recall that from the briefs, but could you address that? Well, I think that there's two problems with that argument. The first is that what a malicious prosecution claim is under the Fourth Amendment is not well developed at this stage. Certainly, this circuit refused to acknowledge it at all until the Supreme Court told the Eighth Circuit that we had to. I can only... Well, then we probably need to... But not in this instance, Your Honor. Because, for one thing, as the Supreme Court recognized, their recognition of the malicious prosecution claim in the Fourth Amendment context is based upon the common law tradition of the malicious prosecution claim, which, at least in the state of Arkansas, requires a prosecution. And there was none in this case. Mr. Ward was arrested, but the charges went no further. There's certainly no evidence of that in the record. And I believe that there was no prolonged detention of Mr. Ward. The example, the specific example, given in the Schiavarini case, is that if there's one valid charge and one invalid charge, and the invalid charge results in a prolonged detention of the plaintiff, then he may have a malicious prosecution claim. And there's none of that here. Mr. Ward went to the hospital as a result of this incident. He never went to jail, and he went back home afterwards. And that's in the record. So I think that there is... What about this nominal damages idea to be erased? Well, I mean, you still have to have a... Did they plead that? No, Your Honor. I think the Schiavarini case came along long after this incident. This incident happened in June of 2019. And this circuit certainly didn't recognize a malicious prosecution claim prior to that. I understand how that's relevant. I'm asking whether he alleged that he's entitled to nominal damages because he was arrested for public intoxication. I do not recall that being an allegation. No, Your Honor. I do not. Okay. Also, along those lines, the refusal to submit to arrest claim, the plaintiff, as I recall, did not dispute that before the district court. So in a lot of many cases that are cited in my brief, this court has said that if there is a probable cause to arrest for one charge, then there's a moot point as to the remaining charges. And the fact that the... The court in Devenpeck v. Alford rejected the closely associated argument that the charge for which there may be probable cause does not have to be closely associated with the other charges. So the refusal to submit charge in and of itself is sufficient to establish probable cause. Probable cause for an arrest then negates the First Amendment claim. And as I understand, the excessive force claim, the only claim for excessive force is that if there was no probable cause for the arrest, that any force at all is per se unreasonable. And that is not the law in this circuit or anywhere else in the land that I'm aware of. And so even if this court were to so find that, Officer Harris should be entitled to qualified immunity. If there's nothing further, I will stand down. Thank you, Your Honor. Mr. Timmons, we'll hear a brief rebuttal. Thank you, Your Honor. First, I'd like to respond to Your Honor's question about whether the nominal damages issue, whether that was pled below. I raised that case specifically in response to Your Honor's question. Nominal damages are pled in the complaint, but you asked a question that there's a specific answer to, and I wanted to give you that. I did not brief that case because it wasn't relevant specifically to our appeal. Just to your question. Did you say nominal damages were pled? You pled the constitutional right for violation, and you pled then in your prayer for relief you asked for compensatory damages, economic and non-economic. And you asked for an award of attorney's fees, an award of punitive damages. And then you do get to the general catch-all, which says such other and further relief as the court may deem just and proper. Your Honor, perhaps I'm incorrect, but I've always understood compensatory to include nominal damages because they are compensation for the civil rights violation itself of $1. Maybe I didn't. I can't say I've ever had that debate with anyone before, so I don't know. You may very well be right. I just had it in a district court a few weeks ago, and that's why it's on my mind. And prevailed. What did the judge say? I prevailed, Your Honor. Same issue. Prevailed on the view that nominal damages were sufficient. Seeking compensatory damages encompasses nominal? Yes, Your Honor. I don't specifically recall the exact language, but I do recall that, yes, that was the issue. Case resolved in our favor. With 15 seconds left, I just want to say that the issue certainly knew that there was a threat was what he said about the meaning of the word Go Code 3. There are two affidavits in the record that dispute the meaning of the term Go Code 3. That is a factual dispute that the court improperly resolved at the summary judgment stage and should have gone to trial. Thank you, Your Honor. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. That concludes the argument.